**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MANUEL VALENCIA,

    Petitioner,

v.     No.   CV 15-1003 JB/CG
                                                            CR 12-3182 JB

UNITED STATES OF AMERICA,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Manuel Valencia's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* ("Petition"), (CV Doc. 1), filed November 4, 2015; Petitioner's *Memorandum in Support of 28 USC § 2255 Petition to Set Aside Sentence* ("Memorandum"), (CV Doc. 6), filed January 2, 2016; Respondent United States' *Response in Opposition to Motion to Vacate Sentence* ("Response"), (CV Doc. 11), filed February 29, 2016; and Petitioner's *Reply in Support of Petition* ("Reply"), (CV Doc. 12), filed June 1, 2016.[1] United States District Judge James O. Browning referred this matter to the Court to make proposed findings and recommend a disposition. (CV Doc. 2). After considering the parties' filings and the relevant law, the Court **RECOMMENDS** that the Petition be **DISMISSED WITH PREJUDICE**.

### I.  Factual and Procedural Background

Petitioner is incarcerated at the Santa Fe County Correctional Facility in Santa Fe, New Mexico. (CV Doc. 1 at 2). On January 20, 2015, pursuant to a *Plea Agreement*,

---

[1] Documents referenced as "CV Doc. ___" are from case number 15-cv-1003-JB-CG. Documents referenced "CR Doc. ___" are from case number 12-cr-3182-JB-6.

(CR Doc. 742), Petitioner pled guilty to an one-count *Information*, (CR Doc. 739), charging him with a cocaine distribution conspiracy. Petitioner was sentenced to 37 months imprisonment by Judge Browning on April 21, 2015. (CR Doc. 905).

Petitioner now brings this action pursuant to 28 U.S.C. § 2255, asking this Court to reschedule a sentencing hearing because Petitioner's attorney at the time of sentencing, Ashli Summer McKeivier, was ineffective. (CV Doc. 6). Respondent argues that Petitioner received effective assistance of counsel, and requests that the Court deny his Petition without a hearing. (CV Doc. 11 at 9).

## II. Legal Standard

An individual claiming that his sentence "was imposed in violation of the Constitution or laws of the United States" may move a court to vacate, set aside, or correct a sentence by filing a petition under 28 U.S.C. § 2255(a). To obtain habeas relief under § 2255, the petitioner must demonstrate "an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict." *United States v. Johnson*, 996 F. Supp. 1259, 1261 (D. Kan. 1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). A court must hold an evidentiary hearing on a § 2255 petition unless the motions, files, and records conclusively show that the prisoner is not entitled to any relief. 28 U.S.C. § 2255(b).

## III. Analysis

As a preliminary matter, the Court will address the untimely Reply filed by Petitioner. The Local Rules state that "[a] reply must be served and filed within fourteen calendar days after service of the response." D.N.M.LR-Civ. 7.4(a); *See* Rules Governing § 2255 Proceedings, Rule 5(e) ("The petitioner may submit a reply to the

respondent's answer or other pleading within a time fixed by the judge."). The Response in this case was filed on February 29, 2016, making the Reply due in March. Petitioner did not file the Reply until June 1, 2016 and Petitioner failed to notify the Court of any agreed upon extension or request an extension of time to file the Reply. Because "[t]he failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing of the motion is complete[,]" the Court will not consider the Reply. D.N.M.LR-Civ. 7.1(b).

Petitioner alleges that he was denied effective assistance of counsel because Ms. McKeivier: (1) did not provide Petitioner with a hard copy of his Presentence Report ("PSR"); (2) did not seek a downward departure pursuant to United States Sentencing Guidelines Manual ("USSG") § 5K2.12 for coercion or duress; (3) did not object to the PSR referring to Petitioner as a "distributor" of cocaine rather than a "courier," in support of a minor or minimal role adjustment; (4) did not request a two-level reduction for safety valve pursuant to USSG §§ 5C1.2, 2D1.1(17); (5) did not argue that the quality issues with the cocaine served as a mitigating factor pursuant to USSG § 2D1.1; (6) did not request a "split sentence," with home confinement; (7) did not ask the Court to include a recommendation for a nearby Federal Correctional Institution "FCI," including FCI Phoenix; (8) did not ask the Court to recommend that the Petitioner participate in the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP"); (9) did not "remind" the Court of a good presentence report from Petitioner's pretrial service officers or his cooperation with the Department of Justice ("DOJ") seizing his motorcycle; (10) did not raise arguments against the amount of the fine imposed by the Court; and (11) failed to present the Court with family hardships and character letters

submitted on Petitioner's behalf. (CV Doc. 6). Based on these errors, Petitioner asks the Court to grant him a new sentencing hearing to present all extenuating and mitigating evidence. (CV Doc. 6 at 12).

Respondent opposes the Petition and argues that it should be denied without a hearing. (CV Doc. 11 at 9). Respondent argues that Petitioner has not carried his burden in establishing that Ms. McKeivier's performance fell below an objective standard, or that, but for an error by Ms. McKeivier, the result for Petitioner would have been different. (CV Doc. 11 at 20).

### A. Law Regarding Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must satisfy a two-part test. First, Petitioner must show that counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, Petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 687. To demonstrate that counsel was ineffective, Petitioner must satisfy both prongs outlined in *Strickland*. *See id.* at 687. Accordingly, the Court may address each of these components in any order, and need not address both if Petitioner makes an insufficient showing on one. *United States v. Dowell*, No. 10-1084, 388 Fed. Appx. 781, 783 (10th Cir. July 21, 2010) (unpublished) (citing *Strickland*, 466 U.S. at 697).

In demonstrating that counsel's performance was deficient under the first prong of the *Strickland* test, "judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S.

at 689. The reasonableness of counsel's performance must be evaluated considering all the circumstances. *Id.* at 688.

To establish prejudice under the second prong of the *Strickland* test, a petitioner must show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where a petitioner alleges ineffective assistance of counsel in connection with a plea agreement, the petitioner must demonstrate that "but for counsel's errors, he would not have pled guilty but rather would have gone to trial." *Neef v. Heredia*, No. 09-2200, 2010 WL 286562, at *2 (10th Cir. Jan. 26, 2010) (unpublished) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985)); *see also United States v. Abston*, No. 10-5091, 401 Fed. Appx. 357, 362 (10th Cir. Nov. 5, 2010) (unpublished).

### B. Trial Counsel's Performance

Petitioner alleges that he was denied effective assistance of counsel because Ms. McKeivier: (1) did not provide Petitioner with a hard copy of his PSR; (2) did not seek a downward departure pursuant to USSG § 5K2.12 for coercion or duress; (3) did not object to the PSR referring to Petitioner as a "distributor" of cocaine rather than a "courier," in support of a minor or minimal role adjustment; (4) did not request a two-level reduction for safety valve pursuant to USSG §§ 5C1.2, 2D1.1(17); (5) did not argue that the quality issues with the cocaine served as a mitigating factor pursuant to USSG § 2D1.1; (6) did not request a "split sentence," with home confinement; (7) did not ask the Court to include a recommendation for a nearby FCI, including FCI Phoenix; (8) did not ask the Court to recommend that the Petitioner participate in BOP's RDAP; (9) did not "remind" the Court of a good PSR from Petitioner's pretrial service officers or

his cooperation with DOJ seizing his motorcycle; (10) did not raise arguments against the amount of the fine imposed by the Court; and (11) failed to present the Court with family hardships and character letters submitted on Petitioner's behalf.  (CV Doc. 6). Respondent argues that Petitioner received effective assistance of counsel. Respondent states that Petitioner has not carried his burden in establishing that Ms. McKeivier's performance fell below an objective standard, or that, but for an error by Ms. McKeivier, the result for Petitioner would have been different. (CV Doc. 11 at 20). The Court will address each of Petitioner's arguments in turn.

    1. *Trial Counsel's Failure to Provide Petitioner a Copy of his PSR*

Petitioner argues that Ms. McKeivier was constitutionally ineffective because she did not provide Petitioner with a copy of his PSR before his sentencing hearing. (CV Doc. 6 at 2). Respondent contends that Ms. McKeivier read the entire PSR to Petitioner and then submitted informal objections on his behalf. (CV Doc. 11 at 10). Additionally, Respondent states that Petitioner affirmed on the record that he had reviewed the PSR. (CV Doc. 11 at 10).

    a. *Whether Trial Counsel's Failure to Provide Petitioner a Copy of his PSR Rendered her Performance Deficient*

Petitioner states that Ms. McKeivier did not provide him with a copy of his PSR prior to his sentencing hearing, which he contends constitutes ineffective assistance of counsel. (CV Doc. 6 at 2). Additionally, Petitioner claims that during the sentencing hearing, a second addendum to the PSR was filed, which Petitioner did not understand. (CV Doc. 6 at 2). Petitioner alleges that at the sentencing hearing Ms. McKeiver told him to "'just say yes' so they would not require a continuance, so he did." (CV Doc. 6 at 2).

As a preliminary matter, in support of his contention that Ms. McKeivier was ineffective because she did not provide Petitioner with his PSR, Petitioner relies on several cases, that do not support this proposition. Petitioner cites to both *United States v. Green*, 483 F.2d 469 (10th Cir. 1973) and *United States v. Stidham*, 459 F.2d 297 (10th Cir. 1972). In *Stidham*, the Court found that denying a defendant's request to see his PSR was not a violation of due process. *Stidham*, 459 F.2d at 299. Similarly, the Court in *Green* held that a trial court did not err in not giving petitioner his copy of a PSR when the PSR was given to his attorney. *Green*, 483 F.2d at 470. Both of these cases cited to the Federal Rules of Criminal Procedure with the 1966 amendments, which have since been updated.

Currently, Rule 32 of the Federal Rules of Criminal Procedure requires a probation officer to give the PSR "to defendant [and] the defendant's attorney . . . at least 35 days before sentencing . . .;" additionally, at sentencing, the court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report . . . ." FED. R. CRIM. P. 32(e)(2); 32(i)(1)(A). In applying this Rule, the Tenth Circuit has held that "the sentencing court may draw reasonable inferences from court documents, the defendant's statements, and counsel's statements in determining whether the defendant and counsel had the opportunity to read and discuss the [PSR]." *United States v. Martinez*, No. 04-2298, 163 Fed. Appx. 722, 727 (10th Cir. Jan. 19, 2006) (unpublished) (quoting *United States v. Rangel-Arreola*, 991 F.2d 1519, 1525 (10th Cir. 1993)).

Here, at the sentencing hearing, Judge Browning asked both Petitioner and Ms. Mckeiver if they had reviewed the PSR and the two addenda together. (CV Doc. 11-2 at

7

2-3). Petitioner stated that he had reviewed both and Ms. McKeivier affirmed that she had reviewed the PSR with Petitioner, but not the second addendum. (CV Doc. 11-2 at 2-3). At this point, the record shows that Judge Browning gave Ms. McKeivier the chance to review the second addendum with Petitioner, after which Petitioner and Ms. McKeivier both affirmed that they had reviewed all of the documents. (CV Doc. 11-2 at 3).

There is additional evidence to support Ms. McKeivier's claim that she read the PSR to Petitioner. She specifically reaffirms this statement in an Affirmation provided to the Court with the Response. (CV Doc. 11-1 at 1-2). Additionally Ms. McKeivier submitted objections to the PSR regarding personal health and family details to the United States Probation Office ("USPO"). (CV Doc. 11-1 at 9-10). Moreover, in an email to Petitioner's girlfriend, Ms. McKeivier writes that "I read [the PSR] to [Petitioner] because you said he doesn't read well[,] which is why I didn't give him a copy." (CV Doc. 11-1 at 12). The record establishes, based on the information from the sentencing hearing, counsel's statements, and counsel's evidence submitted to the Court, that Ms. McKeivier discussed the PSR with Petitioner and Petitioner has not presented facts that suggest otherwise. Therefore, Petitioner has failed to meet his burden of rebutting the presumption that counsel acted objectively reasonable. As a result, the Court finds that Petitioner has failed to satisfy the first prong of the *Strickland* standard.

      b. *Whether Petitioner was Prejudiced by Trial Counsel's Deficient Performance*

Even assuming counsel's performance fell below an objective standard of reasonableness, Petitioner fails to argue that any deficient performance prejudiced his defense. Where a petitioner alleges ineffective assistance of counsel in connection with

a plea agreement, the petitioner must demonstrate that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (citing *Hill*, 474 U.S. at 52, 59). In this case, Petitioner does not argue that he would not have pled guilty, but instead asks the Court for a resentencing hearing. (CV Doc. 6 at 12). Given that Petitioner does not allege any facts suggesting he would not have pled guilty, Petitioner fails to meet the second prong of the *Strickland* test.

 2. <u>Trial Counsel's Failure to Seek a Downward Departure for Coercion or Duress</u>

Petitioner alleges that Ms. McKeivier failed to seek a downward departure of his sentence based on coercion or duress under USSG §5K2.12. (CV Doc. 6 at 3-4). Petitioner claims that he was assaulted in order to force him to participate in the cocaine distribution conspiracy for which he pled guilty. (CV Doc. 6 at 3). Respondent contends that Petitioner told Ms. McKeivier that he was assaulted and sustained a head injury; however, Petitioner never told Ms. McKeivier that the assault was related to the drug conspiracy. (CV Doc. 11-1 at 3-4). Ms. McKeivier did tell USPO about the assault and a statement that Petitioner had been assaulted was included in the PSR. (CV Doc. 11-1 at 4).

As evidence that Petitioner was assaulted to force him to participate in the conspiracy, Petitioner attached an Incident Report and medical records to his Memorandum. The Incident Report states that "two male subjects attempted to break into [Petitioner's] residence" and "hit [Petitioner] on the side of the head with what appeared to be a tire tool." (Doc. 6-1 at 5). Neither the Incident Report nor the hospital records make reference to any motive for the assault or identifies the persons involved

9

in the assault. Petitioner argues he did not tell police he was assaulted to coerce him into participating in the conspiracy "out of fear." (Doc. 6 at 3).

Petitioner had several opportunities to ensure that information about the assault was provided to Judge Browning. As the Court previously found, Ms. McKeivier read the PSR to him and Petitioner was given an opportunity to object to information in the PSR. (*See* CV Doc. 11-2 at 2-3). While Petitioner did make several objections to the PSR, Petitioner did not object to the general characterization of the assault in the PSR. (*See* CV Doc. 11-1 at 9-10). At the sentencing hearing, Judge Browning gave Petitioner a second chance to object to the information in the PSR. Ms. McKeivier made two objections to the PSR and argued for one downward departure. (CV Doc. 11-2). After the argument, Judge Browning asked Petitioner if he would like to address the Court to state "what [Petitioner would] like the Court to consider before it imposes sentence . . . ." (CV Doc. 11-2 at 35). Petitioner stated, "I don't need to." (CV Doc. 11-2 at 35). The Court gave Petitioner a second chance to speak asking, "[y]ou don't want to make a statement?" (CV Doc. 11-2 at 36). To which Petitioner responded, "[t]hat's right." (CV Doc. 11-2 at 36). At no time did the Petitioner notify the Court that Ms. McKeivier had not given the correct information about the assault to the Court. Additionally, there is nothing in the record to show that Petitioner gave Ms. McKeivier more information about the assault than what Ms. McKeivier included in the PSR. As a result, Petitioner has not shown that Ms. McKeivier performance fell below an objective standard of reasonableness or that Petitioner was prejudiced by Ms. McKeivier failing to seek a downward departure for Petitioner based on coercion.

    3. <u>Trial Counsel's Failure to Object to the PSR referring to Petitioner as a "Distributor"</u>

Petitioner states that it was error for Ms. McKeivier not to object to the PSR classifying Petitioner as a "distributor" instead of a "courier." (Doc. 6 at 5). Petitioner argues that because of the misclassification, the Court was not fully informed about Petitioner's role in the conspiracy and did not apply a minor role adjustment. (Doc. 6 at 5). Respondent argues that Ms. McKeivier did argue for a minimal or minor role adjustment and characterized Petitioner not as a "distributor, but as a "middleman." (CV Doc. 11 at 12).

      a. *Whether Trial Counsel's Failure to Object to the PSR referring to Petitioner as a "Distributor" Rendered her Performance Deficient*

Petitioner argues that Ms. McKeivier was ineffective because she did not object to Petitioner being classified as a "distributor" in the PSR. (CV Doc. 6 at 5). Petitioner also states that "[a] courier is not per se entitled to a two or four point reduction, it is ineffective assistance of counsel not to raise the issue of role reduction." (CV Doc. 6 at 5). Based on this statement, the Court believes Petitioner is additionally claiming that Ms. McKeivier did not make a role reduction argument. Respondent argues that Ms. McKeivier made these arguments to the Court. (CV Doc. 11 at 13).

A review of the record shows that during the sentencing hearing, Ms. McKeivier's first argument to the Court was for a minimal or minor role adjustment. (CV Doc. 11 at 38-50). This argument at the sentencing hearing negates Petitioner's statement that Ms. McKeivier did not in fact argue for a role reduction.

As for Petitioner's "courier" versus "distributor" argument, at the plea hearing, Chief United States Magistrate Judge Karen Molzen asked Petitioner to "tell me in your own words what you did that makes you guilty of this conspiracy[.]" (CV Doc. 11-3 at 2-

3). Plaintiff stated that he "was the middleman on a cocaine distributing." (CV Doc. 11-3 at 3). Further on in the interaction, Judge Molzen asked Petitioner to tell her what a middleman does and Petitioner responded, "[w]ell by knowing someone else that had it and, you know, I knew someone that wanted it." (CV Doc. 11-3 at 3). Petitioner never classified himself to the Court as a "courier."

In her argument at the sentencing hearing, Ms. McKeivier also stated that Petitioner was a middleman. (CV Doc. 11 at 42). When Judge Browning referred to Petitioner as a "supplier," Ms. McKeivier interjects, stating that "I would more aptly characterize him as a middleman." (CV Doc. 11 at 43-44). Ms. McKeivier addresses the term "distributor," stating that "I would call him more of a middleman. But I understand that this can be classified as a distributor or a supplier." (CV Doc. 11 at 45). As before, Petitioner had the opportunity to object to the characterization of himself when reviewing the PSR, at the plea hearing, and at the sentencing hearing. However, Petitioner when given the chance to characterize himself as a "courier," Petitioner instead stated that he was a "middleman." (CV Doc. 11 at 91). Moreover, Petitioner has failed to show that Ms. McKeivier was ineffective as she clearly made an argument for a minor role adjustment and classified Petitioner using the same language that Petitioner himself used, which the Court ultimately rejected.

> b. *Whether Petitioner was Prejudiced by Trial Counsel's Deficient Performance*

Even assuming counsel's performance fell below an objective standard of reasonableness; Petitioner also fails to demonstrate that any deficient performance prejudiced his defense. Petitioner appears to argue that he would have been eligible for a role reduction if he had been classified as a "courier." (CV Doc. 6 at 5). However, as

the case law Petitioner cites makes clear, "a courier is not necessarily a minor or minimal participant . . . ." *United States v. Harfst*, 168 F.3d 398, 403 (10th Cir. 1999). The Tenth Circuit has held that "[d]rug couriers are an indispensable component of drug dealing networks[;]" therefore, the Court has "refused to adopt a per se rule allowing a downward adjustment based solely on a defendant's state as a drug courier." *United States v. Martinez*, Nos. 10-40091-01-SAC, 11-4085 SAC, 2011 WL 5553677, at *3 (D. Kan. Nov. 15, 2011) (unpublished) (quoting *United States v. Eckhart*, 569 F.3d 1263, 1276 (10th Cir. 2009)).

Here, Judge Browning rejected the claim that Petitioner had a minor role in the conspiracy or that he was simply a "middleman." Even if Ms. McKeivier had labeled Petitioner a "courier," the different label would not have changed Judge Browning's analysis of Petitioner's actual role in the conspiracy. Indeed, "a downward adjustment for a defendant's role in an offense turns on the defendant's culpability relative to other participants in the crime[,]" not on Petitioner's own classification of his role. *Eckhart*, 569 F.3d at 1267. Given that a different classification would not have changed Judge Browning's analysis of Petitioner's culpability, Petitioner has not shown that but for Ms. McKeivier's failure to object to the classification, the proceeding would have turned out differently for Petitioner.

### 4. *Trial Counsel's Failure to Request a Safety Valve Reduction*

Petitioner contends that Ms. McKeivier provided ineffective assistance because Ms. McKeivier did not argue that Petitioner should have received a safety valve reduction. (CV Doc. 6 at 6).[2] Petitioner states that if Ms. McKeivier had reviewed

---

[2] In his Memorandum, Petitioner also claims that "the prosecutor is withholding information gleaned from other defendants in their debriefing which confirm[s] that [Petitioner] was not involved except as a minor

13

discovery evidence she could have "highlighted" to the United States that Petitioner was being truthful in his statements at his debriefing. (CV Doc. 6 at 6). Respondent contends that Ms. McKeivier made a strategic decision not to apply for a safety valve reduction because Petitioner did not meet the criteria. (CV Doc. 11 at 13-4).

To qualify for the safety valve exception,

> not later than the time of the sentencing hearing, the defendant has [to have] truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct of a common scheme or plan . . . .

USSG § 5C1.2(a)(5). In this case, in her Affidavit, Ms. McKeivier claims that the United States informed her that they would oppose a request for the safety valve exception, because the United States did not believe Petitioner was truthful with them at his debriefing. (CV Doc. 11-1 at 5-6). Because Ms. McKeivier was concerned that she would not be able to meet the burden of the safety valve requirements, she made the strategic decision not to pursue a safety valve reduction. (CV Doc. 11-1 at 5-6).

The decision to raise a specific defense is an "aspect of trial strategy, and informed 'strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong.'" *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (quoting *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002)). The "virtually unchallengeable presumption of reasonableness operates only where it is shown (1) that counsel made a strategic decision and (2) that the decision was adequately informed." *Id*.

Petitioner contends that Ms. McKeivier's decision was not adequately informed,

---

participant in one failed exchange." (CV Doc. 6 at 7). Petitioner's only ground on appeal in his § 2255 Petition is for ineffective assistance of counsel, so the Court will not address this allegation against the Respondent. Additionally, Respondent states that they are aware of their ongoing *Brady* obligations to disclose exculpatory information to Petitioner.

because she failed to bring to the government's attention information Petitioner believes shows that he was truthful about a one-time supplier. (CV Doc. 6 at 6). Contrary to Petitioner's claims, at the sentencing hearing Ms. McKeivier argued to the Court that Petitioner names his source, the claim that Petitioner alleges she ignored in her argument at the sentencing hearing when arguing for a downward departure. (*See* CV Doc. 11-2 at 4-5, 15). Further, at the sentencing hearing, the United States stated that they do "not dispute that [Petitioner] has a source of supply." (CV Doc. 11-2 at 22). Based on the arguments before the Court, it is clear the Ms. McKeivier did review the discovery and bring the information to the attention of the United States.

Petitioner, himself, had the burden to show that he provided the United States with truthful information in order to prove that he was eligible for a safety valve reduction. Because the United States felt that Petitioner was not truthful, Ms. McKeivier made the strategic decision to not argue for the safety valve reduction. Given that the tactic was reasonable under the circumstances, Petitioner has not shown that Ms. McKeivier was ineffective.

     *5.  Trial Counsel's Failure to Argue Quality Issues as a Mitigating Factor*

Petitioner contends that Ms. McKeivier should have argued that the low quality of the cocaine at issue should have been a mitigating factor in sentencing. (CV Doc. 6 at 8). The record shows that Ms. McKeivier did, in fact, make the quality as a mitigating factor argument that Petitioner claims she should have made before the Court. (*See* CV Doc. 11-2 at 6-7). Petitioner has not shown that Ms. McKeivier was ineffective given that she made this quality argument at the sentencing hearing.

     *6.  Trial Counsel's Failure to Request a "Split Sentence"*

Petitioner states that Ms. McKeivier did not ask the Court for a "split sentence involving some measure of house arrest in addition to incarceration." (CV Doc. 6 at 8). A review of the record shows that Ms. McKeivier did ask the Court for a sentence of probation with a year of home confinement twice during the sentencing hearing. (*See* CV Doc. 11-2 at 30, 34). Judge Browning also acknowledged that Ms. McKeivier asked for a sentence of home confinement. (*See* CV Doc. 11-2 at 46). Given the record, the Petitioner has not shown that Ms. McKeivier was ineffective.

### 7. Trial Counsel's Failure to Recommend FCI Phoenix

Petitioner alleges that Ms. McKeivier "failed to determine" that Petitioner would like the Court to recommend he be placed at FCI Phoenix. (CV Doc. 6 at 9). The Petitioner has provided no support for the proposition that a failure to ask for a particular facility constitutes ineffective assistance of counsel. It is Petitioner's burden to show that Ms. McKeivier was ineffective and he has failed to do so.

### 8. Trial Counsel's Failure to Recommend BOP's RDAP Program

Petitioner claims that Ms. McKeivier was ineffective because she did not inform the Court that Petitioner was eligible for an RDAP program. (CV Doc. 6 at 9). Respondent argues that Ms. McKeivier did not inform the Court based on Petitioner's statements to her and to USPO that he was a recovering alcoholic and his completion of counseling for marijuana use. (CV Doc. 11 at 16; CV Doc. 11-1 at 6-7).

Whether or not Ms. McKeivier should have recommended Petitioner be placed in the RDAP program, Petitioner cannot prevail on a claim for ineffective assistance of counsel under *Strickland*. Petitioner must show that he was prejudiced by Ms. McKeivier's actions. As stated above, to satisfy the prejudice requirement, Petitioner

16

would have to show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. 52, 59. Petitioner does not argue that he would have changed his plea but for this error, thus his ineffective assistance of counsel claim fails.

      9. <u>Trial Counsel's Failure to Present the Court with Good Reports from Pretrial Service Officers or Petitioner's Cooperation with DOJ Seizing his Motorcycle</u>

Petitioner argues that because Ms. McKeivier "failed to remind the court of stellar reports" from Petitioner's pretrial service officers, Ms. McKeivier was ineffective. (CV Doc. 6 at 9). Petitioner also argues that Ms. McKeivier failed to inform the Court that Petitioner cooperated when DOJ seized his motorcycle. (CV Doc. 6 at 9). Respondent states that it was not unreasonable for Ms. McKeivier not to raise this fact in argument because the Court would not grant Petitioner a benefit based on his conduct before he pled guilty to the cocaine conspiracy. (CV Doc. 11 at 17). Again, Petitioner provides no case law for the proposition that the failure to remind the Court about pretrial conduct or his cooperation with DOJ would amount to ineffective assistance. Furthermore, and for the same reasons stated above, Petitioner cannot prevail on the prejudice prong of *Strickland* based on these arguments.

      10. <u>Trial Counsel's Failure to Argue Against the Amount of the Fine Imposed</u>

Petitioner contends that Ms. McKeivier was ineffective because she did not dispute the fine and money judgment that the Court imposed. (CV Doc. 6 at 10). Petitioner also argues that Ms. McKeivier did not correct the Court as to the ownership of the horses that Petitioner housed at his stable. (CV Doc. 6 at 10). Respondent states that the Court carefully analyzed Plaintiff's financial situation with the cost to taxpayers

of Petitioner's incarceration in order to determine the fine and money judgment. (CV Doc. 11 at 18). As for the horses, Respondent claims that Petitioner read and made an objection to the valuation, but not the ownership, of the horses in the PSR, which Ms. McKeivier submitted to USPO. (CV Doc. 11 at 18; *See* CV Doc. 11-1 at 9-10).

Turning first to the fine amount, Judge Browning determined the amount of the fine based on a calculation of the cost of Petitioner's incarceration and supervised release multiplied by the 37 months of incarceration and three years of supervised release. (CV Doc. 11-2 at 48-9). Contrary to Petitioner's claim that Ms. McKeivier "did not dispute" the fine, Ms. McKeivier objected to the fine at the sentencing hearing. (CV Doc. 11-2 at 49). The money judgment imposed on Plaintiff was part of the Plea Agreement that Plaintiff signed. (*See* CR Doc. 742 at 6).

As to the valuation of the horses, based on Petitioner's statements, Ms. McKeivier filed an objection with USPO regarding the valuation of the horses made in the PSR. (*See* CV Doc. 11-1 at 10). Additionally, Judge Browning questioned Ms. McKeivier about the number and value of each horse that Petitioner owned during the sentencing hearing. (*See* CV Doc. 11-2 at 34-35). Petitioner never notified Ms. McKeivier or the Court that he did not own the horses.

Moreover, Petitioner fails to make an argument as to the second prong of the *Strickland* test regarding both of these claims. He does not state how he was prejudiced by Ms. McKeivier's actions, thus he cannot make an ineffective assistance claim.

11. <u>Trial Counsel's Failure to Present Family Hardships and Character Letters</u>

Finally, Petitioner argues that Ms. McKeivier "failed to expand on the countless number of character letters written on [Petitioner's] behalf." (CV Doc. 6 at 11). Despite

Petitioner's claim, the record clearly shows that Ms. McKeivier argued in support of the Court's leniency for Petitioner based on his character, reputation, and the hardship to his family. (*See* CR Doc. 847; CV Doc. 11-2 at 30, 34). The Court acknowledged the large number of character letters that were submitted to the Court when determining Petitioner's sentence. (CV Doc. 11-2 at 42, 45). The record clearly shows that Ms. McKeivier did provide the Court with the letters and, based on those letters, argues for leniency in sentencing based on them. Petitioner has failed to carry his burden in showing that Ms. McKeivier was ineffective.

## IV.  Recommendation

For the reasons discussed above, the Court finds that Petitioner has failed to allege that he was denied effective assistance of counsel in violation of his Sixth Amendment rights. Because the pleadings, files, and records conclusively show that Petitioner is not entitled to any relief, the Court will not hold a hearing in this case. *See* 28 U.S.C. § 2255(b). Therefore, the Court **RECOMMENDS** that Petitioner Manuel Valencia's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, (CV Doc. 1), be **DISMISSED WITH PREJUDICE**. The Court further recommends that a certificate of appealability be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE